Randall E. Kay (SBN 149369)
rekay@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, California  92121.3134
Telephone:  +1.858.314.1200

Andrea W. Jeffries (SBN 183408)
ajeffries@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071
Telephone:  +1.213.489.3939

Sarah A. Geers (*Pro Hac Vice* Forthcoming)
sgeers@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone:  +1.212.326.3936

Attorneys for Plaintiff AGENSYS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGENSYS, INC., | Case No.  2:24-cv-3961 |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California entity; NORBERT PEEKHAUS, an individual; HANS DAVID ULMERT, an individual; and DOES 1-10, | |
| Defendants. | |

Plaintiff Agensys, Inc. ("Plaintiff" or "Agensys") files this Complaint against Defendants The Regents Of The University Of California ("Regents"), Norbert Peekhaus ("Peekhaus"), Hans David Ulmert ("Ulmert"), and Does 1–10, as follows. When used herein, "Defendants" refers collectively to all defendants.

## NATURE OF THE ACTION

1.     This action arises from misappropriation of Agensys' trade secrets by Regents, Peekhaus, and Ulmert, and from Peekhaus' breach of his employment contract with Agensys.

2.     From March 2010 through September 2017, Peekhaus worked for Agensys as a Senior Research Scientist and then as a Senior Principal Scientist. During that time, Peekhaus worked out of Agensys' Santa Monica, California facility.

3.     Beginning in or around 2010, a scientific team at Agensys identified as a promising research target a specific protein associated with cancer cells and surrounding tissue.  This protein is called LRRC15, which stands for leucine-rich repeat-containing 15.  Peekhaus was part of this scientific target discovery team.

4.     In or around 2013, Agensys assembled a research program dedicated to finding therapies targeting LRRC15.  This program was called the AGS79 program. Peekhaus led the program, and, among other things, was responsible for developing (i) antibodies targeting the LRRC15 protein (i.e., "anti-LRRC15" antibodies) and (ii) therapeutic agents to attack LRRC15-expressing cells associated with certain cancers.

5.     Developing these antibodies and therapeutic agents involved the creation of unique amino acid binding sequences for LRRC15, as well as data relating to the chemical and biological properties of the anti-LRRC15 antibodies and binding sequences, such as (i) high binding affinity and selectivity, (ii) cross-reactivity to human and non-human LRRC15, (iii) effective *in vivo* targeting of LRRC15-expressing cells, and (iv) suitability for conjugation with other therapeutic agents without substantial loss of advantageous properties.  The AGS79 program further involved the creation of scientific information regarding the conjugation of anti-LRRC15 antibodies with other anti-cancer agents, including information about the ability of these conjugates to effectively kill cancer cells.  Collectively, the above-

described information relating to the anti-LRRC15 antibodies and binding sequences is referred to herein as the "Agensys LRRC15 Antibody Trade Secrets." During the course of his employment, Peekhaus had direct and continuous access to the Agensys LRRC15 Antibody Trade Secrets and related confidential information.

6.     As a condition of his employment, Peekhaus entered into an employment contract with Agensys that, among other things, required Peekhaus to maintain the secrecy of the Agensys LRRC15 Antibody Trade Secrets and related confidential information, and assigned to Agensys ownership of all inventions and discoveries Peekhaus made in connection with his employment.

7.     Peekhaus was aware of his responsibility to maintain the secrecy of the Agensys LRRC15 Antibody Trade Secrets and related confidential information he acquired at Agensys, even apart from his employment contract.

8.     On September 24, 2017, Peekhaus left Agensys. Shortly thereafter, on information and belief, Peekhaus commenced employment with Regents and remained employed at Regents for approximately 19 months.

9.     On April 1, 2020, Regents began filing U.S. patent applications, listing Peekhaus as an inventor, along with Ulmert, that set forth some of the Agensys LRRC15 Antibody Trade Secrets and related confidential information Agensys had entrusted Peekhaus to maintain in secrecy, including the amino acid sequences for the variable heavy and variable light chains (i.e., the binding sequences) of one of the trade secret anti-LRRC15 antibodies discovered in the AGS79 program. Regents disclosed these amino acid sequences as SEQ ID NOS. 1 and 2 in its associated patent applications, identified below.

10.     It is apparent from the Regents patent applications that Peekhaus improperly disclosed Agensys LRRC15 Antibody Trade Secrets and related confidential information to Ulmert and Regents (among others), who then used and further disclosed Agensys LRRC15 Trade Secrets and related confidential information for their own competitive benefit.

11.     Regents not only filed patent applications using and disclosing Agensys LRRC15 Antibody Trade Secrets and related confidential information, but it also licensed those patent applications and related technology to Radiopharm Theranostics Limited ("Radiopharm") in Australia.  In so doing, Regents is believed to have disclosed the binding sequences for Agensys' trade secret anti-LRRC15 antibodies, as well as additional Agensys LRRC15 Antibody Trade Secrets and related confidential information.  Regents' license to Radiopharm evidences value in the Agensys LRRC15 Antibody Trade Secrets as the license is alleged to have provided for an upfront cash payment of $100,000 paid by June 30, 2022 with a specified royalty schedule.

12.     On information and belief, Radiopharm intends to pursue development, manufacture, and pre-clinical and clinical testing of therapies based on or derived from Agensys LRRC15 Antibody Trade Secrets and related confidential information, including Agensys' trade secret anti-LRRC15 antibody sequences, and Regents and Radiopharm intend for a product derived from the Agensys LRRC15 Antibody Trade Secrets to be used in interstate commerce or in foreign commerce in Australia.

13.     Defendants' misappropriation and dissemination of Agensys LRRC15 Antibody Trade Secrets and related confidential information have deprived Agensys of its rightful sole and exclusive ownership and possession of its trade secrets, confidential information, and inventions.  Justice demands that Defendants pay for what they have misappropriated from Agensys.  Justice also requires that the Regents patent applications derived from Agensys LRRC15 Antibody Trade Secrets and related confidential information be assigned to Agensys.

### THE PARTIES

14.     Agensys is a corporation organized and existing under the laws of the State of California.  Agensys has been registered to conduct business in the State of California for over 25 years.  At all times relevant to this complaint, Agensys

operated in Santa Monica, California.  Agensys has its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062.

15.    On information and belief, Regents is a public corporation organized and existing under the laws of the State of California operating under Article IX, Section 9 of the California Constitution, having its corporate offices located at 1111 Franklin Street, Oakland, California 94607.

16.    On information and belief, Peekhaus is an individual domiciled in Los Angeles County, California, and is presently employed by Uptake Bio.

17.    On information and belief, Ulmert is an individual domiciled in Los Angeles County, California, and is presently employed by Regents as an Assistant Professor-in-Residence in Molecular and Medical Pharmacology in Los Angeles.

18.    At present, Agensys is ignorant of the true names and capacities of additional entities and individuals involved in and responsible for the misappropriation of Agensys LRRC15 Antibody Trade Secrets and related confidential information, including by filing patent applications using and disclosing Agensys LRRC15 Antibody Trade Secrets and related confidential information and, therefore, sues them herein under the fictitious names Does 1–10.  Agensys will amend to identify and state applicable claims, as appropriate, against additional entities and individuals as relevant information becomes available through investigation and discovery.

## JURISDICTION AND VENUE

19.    This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 because Agensys asserts federal claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.  The Court has supplemental jurisdiction over Agensys' remaining state law claims, which form part of the same case or controversy as the federal question claims, pursuant to 28 U.S.C. § 1367(a).

20.    This Court has personal jurisdiction over Regents, a public corporation organized under the laws of the State of California and operating under Article IX, Section 9 of the California Constitution.  Regents is headquartered at 1111 Franklin Street, Twelfth Floor, Oakland, CA 94607.

21.    Regents operates 10 public universities in the State of California, including the University of California Los Angeles ("UCLA"), located at 405 Hilgard Avenue, Los Angeles, CA 90095.

22.    This Court has personal jurisdiction over Peekhaus, an individual domiciled in Los Angeles, California.

23.    This Court has personal jurisdiction over Ulmert, an individual domiciled in Santa Monica, California.

24.    Alternatively, this Court has personal jurisdiction over the Defendants because the alleged misappropriation of Agensys LRRC15 Antibody Trade Secrets and related confidential information by Peekhaus, Ulmert, and Regents, is believed to have occurred in this district, in whole or in part.  UCLA, the Regents site where Regents' and Ulmert's misappropriation of Agensys LRRC15 Antibody Trade Secrets and related confidential information is alleged to have taken place, is in this district.  Peekhaus' misappropriation of Agensys LRRC15 Antibody Trade Secrets and related confidential information is alleged to have taken place, in whole or in part, in this district at Agensys' Santa Monica facilities and at UCLA. Further, Peekhaus entered into, and breached, various provisions of his employment agreement with Agensys, while employed at Agensys' Santa Monica facilities, located in this district.

25.    Venue in this district is proper as to Regents under 28 U.S.C. § 1391(d) because Regents is a public corporation operating under Article IX, Section 9 of the California Constitution, maintains corporate offices located in this state, and engages in regular business in California and this district.

26.     Venue in this district is proper under 28 U.S.C. § 1391(c) as to each of Peekhaus and Ulmert because they are natural persons who reside in this district.

## FACTUAL ALLEGATIONS

### Agensys' Innovations and Trade Secrets

27.     Founded in 1997 in Santa Monica, California, Agensys is a pharmaceutical company that focuses on developing cancer treatments using specialized antibodies.

28.     Beginning in or around June 2010, Agensys began a program to identify potential targets for a type of cancer therapy that has become known as ADC (antibody-drug conjugate) therapy.

29.     Through this target discovery program, Agensys identified LRRC15 as a protein that is highly expressed in the cells surrounding a variety of tumors (sometimes referred to as "stroma") and in certain cancer cells themselves.  Agensys further determined that LRRC15 typically had no or low expression in normal cells and tissues.

30.     These discoveries led Agensys scientists, including Peekhaus, to hypothesize that the LRRC15 protein could be used as a target for cancer therapy—antibodies that specifically target the LRRC15 protein could bring anti-cancer compounds to, and selectively attack, cancer cells and surrounding stroma that express the LRRC15 protein.

31.     In or around 2013, Agensys initiated the AGS79 research program dedicated to this hypothesis.  The AGS79 program included identifying (i) anti-LRRC15 antibodies, including their unique amino acid sequences to bind LRRC15 and associated properties, and (ii) potential therapies using anti-LRRC15 antibodies to attack LRRC15-expressing cancer and stroma cells (for example, ADCs using anti-LRRC15 antibodies).  Peekhaus was designated the program leader for AGS79.

32.     Agensys scientists in the AGS79 program generated, developed, characterized, tested, and selected among many anti-LRRC15 antibodies, and

utilized their anti-LRRC15 antibodies to design, develop, and test associated anti-cancer therapies. In so doing, Agensys created the Agensys LRRC15 Antibody Trade Secrets, which differed from the general knowledge in the trade during the relevant period, and related confidential information.

33. Peekhaus learned Agensys LRRC15 Antibody Trade Secrets and related confidential information, including the amino acid binding sequences for LRRC15 disclosed by Regents as SEQ ID NOS. 1 and 2 in its later-filed patent applications, during his employment at Agensys and leadership of the AGS79 program.

**Agensys' Trade Secrets Are Valuable and Agensys Protected Their Secrecy**

34. Agensys developed the Agensys LRRC15 Antibody Trade Secrets, including the amino acid binding sequences for LRRC15 later disclosed by Regents as SEQ ID NOS. 1 and 2, and related confidential information at great expense. Agensys' AGS79 program involved significant investment from Agensys, including funding, resources, personnel, and opportunity costs over a multi-year period.

35. The Agensys LRRC15 Antibody Trade Secrets have independent economic value to Agensys as they constitute intellectual property assets with commercial value from not being generally known to, and not being readily ascertainable through proper means by, others who can obtain economic value from the disclosure or use of the information.

36. In using the Agensys LRRC15 Antibody Trade Secrets and related confidential information, Agensys' competitors including Defendants benefit by saving significant time and resources in developing and characterizing valuable anti-LRRC15 antibodies and ADCs derived from such antibodies.

37. Agensys spent seven years and millions of dollars developing the Agensys LRRC15 Antibody Trade Secrets and related confidential information, including the amino acid binding sequences for LRRC15 disclosed by Regents as SEQ ID NOS. 1 and 2, and took great care to prevent their disclosure. The Agensys LRRC15 Antibody Trade Secrets and related confidential information have value

from Agensys' substantial investment of funding in their development and their continued commercial worth, promise, and potential.

38.    Agensys entrusted Peekhaus, as well as all others in the AGS79 program, with the Agensys LRRC15 Antibody Trade Secrets and related confidential information.

39.    Agensys took reasonable measures to protect the Agensys LRRC15 Antibody Trade Secrets and related confidential information, including amino acid binding sequences for LRRC15 such as those disclosed by Regents as SEQ ID NOS. 1 and 2.

40.    Agensys' reasonable protective measures include employee agreements for all Agensys employees, obligating all individuals with access to Agensys' trade secrets and proprietary information to maintain the secrecy of the information. Agensys has had such employment agreements in place at all times relevant to this Complaint.

41.    Additionally, Agensys protects access to its proprietary information and trade secrets by, among other things, restricting access to its facilities, computers, documents, lab notebooks, and equipment.  At all times relevant to this Complaint, Agensys restricted access to the Agensys LRRC15 Antibody Trade Secrets and related confidential information by requiring badge access to enter its facilities, using passwords for electronic devices, and enforcing security policies on all Agensys properties.

42.    Agensys also protects access to its proprietary information and trade secrets by, among other things, restricting access to its electronic document storage systems, software, network computer drives, electronically stored data, electronically stored lab notebooks, and electronic communications.  At all times relevant to this Complaint, Agensys restricted access to the Agensys LRRC15 Antibody Trade Secrets and related confidential information by requiring passwords and restricting users' online access.

## **Defendants' Misappropriation of Agensys' Trade Secrets**

43.    Shortly after Peekhaus took a position with Regents in or around February 2018, Regents, Peekhaus, and Ulmert began using the Agensys LRRC15 Antibody Trade Secrets and related confidential information, and filing patent applications disclosing the Agensys LRRC15 Antibody Trade Secrets, including the amino acid binding sequences for LRRC15 disclosed by Regents as SEQ ID NOS. 1 and 2, and related confidential information.

44.    The Regents patent applications that contain Agensys LRRC15 Antibody Trade Secrets and related confidential information include U.S. Patent Application No. 17/915,377 (published as U.S. Patent Application Publication No. 2023/0133775); U.S. Provisional Application No. 63/003,598; and International Application No. PCT/US2021/025054 (published as International Publication No. WO 2021/202642).

45.    Regents filed U.S. Provisional Patent Application No. 63/003,598 ("the '598 provisional") on April 1, 2020, listing Peekhaus and Ulmert as inventors and Regents as the sole assignee.

46.    On March 31, 2021, Regents filed a related international patent application under the Patent Cooperation Treaty ("PCT"), assigned PCT International Application No. PCT/US2021/025054 (the "PCT application"). Peekhaus and Ulmert are listed as inventors, and Regents is listed as the sole assignee of the PCT application.

47.    Regents then filed U.S. Patent Application No. 17/915,377 ("the '377 application") on September 28, 2022, as the U.S. counterpart to the PCT application and claiming priority to the '598 provisional.  The '377 application later published as U.S. Patent Application Publication 2023/0133775 ("the '775 publication") on May 4, 2023.  Peekhaus and Ulmert are listed as inventors and Regents is listed as the sole assignee of the '377 application.  A true and correct copy of the '377

application (as embodied in the '775 publication) is attached to this Complaint as Exhibit 1 and incorporated herein by this reference.

48.    The PCT application has entered the national phase, with pending patents in at least nine jurisdictions around the globe, as listed in the United States Patent and Trademark Office's Global Dossier.  *See*, *e.g.*, https://globaldossier.uspto.gov/result/application/US/17915377/98291.

49.    The foregoing patent applications and any other inventions and patent applications that incorporate, disclose, claim, or use the Agensys LRRC15 Antibody Trade Secrets and related confidential information that Defendants have filed or will file based on the Agensys LRRC15 Antibody Trade Secrets and related confidential information are referred to collectively as "the Patent Rights."

50.    Defendants used the Agensys LRRC15 Antibody Trade Secrets and related confidential information to develop the subject matter of the Patent Rights, including the amino acid binding sequences for LRRC15 disclosed as SEQ ID NOS. 1 and 2.

51.    The Patent Rights disclose Agensys LRRC15 Antibody Trade Secrets and related confidential information.

52.    For example, the '377 application, along with the '598 provisional and the PCT application, disclose Agensys LRRC15 Antibody Trade Secret amino acid binding sequences in SEQ ID NOS. 1 and 2.  *See* '775 publication, ¶¶ [0063]–[0065], SEQ ID NOS. 1 and 2.  These sequences, each being over 100 amino acids long, are exact replicas, i.e., copies, of valuable Agensys LRRC15 Antibody Trade Secret binding sequences for LRRC15 discovered at Agensys and known to Peekhaus through his involvement in the AGS79 program.

53.    In addition, the '377 application discloses other Agensys LRRC15 Antibody Trade Secrets, including that an anti-LRRC15 antibody having the amino acid binding sequences in SEQ ID NOS. 1 and 2 (named "DUNP19" in the '377

application) is optimized and has advantages over other anti-LRRC15 antibodies. *See* '775 publication, ¶¶ [0009]–[0010], [0014], [0024]–[0028], [0062]–[0063].

54.   Further, the '377 application uses and discloses Agensys LRRC15 Antibody Trade Secrets in proposed claims, including claims 16 and 63, reciting monoclonal antibodies and "targeting molecules" that bind to LRRC15 comprising "the amino acid sequences of SEQ ID NO:1 and SEQ ID NO:2," both alone and when "associated with a cytotoxic agent."

55.   It is thus clear that Defendants used the Agensys LRRC15 Antibody Trade Secrets and related confidential information, including knowledge of the anti-LRRC15 antibody binding sequences and their properties, to develop the subject matter of the '377 application.  Peekhaus provided these Agensys LRRC15 Antibody Trade Secret sequences to Regents and Ulmert for their use, inclusion in the '377 application (including in SEQ ID NOS. 1 and 2) to obtain patent coverage, and subsequent licensing and commercialization to the detriment of Agensys.

56.   Agensys reasonably first discovered Defendants' misappropriation in August 2023 when it first learned of the '775 publication through the exercise of reasonable diligence.

**Additional Ongoing Misappropriation of Agensys Trade Secrets and Confidential Information**

***Radiopharm***

57.   On or around April 4, 2022, Radiopharm announced that it had entered into an exclusive license agreement for the Patent Rights with Regents.

58.   Radiopharm licensed the Patent Rights from Regents in order to pursue the anti-LRRC15 antibody denominated "DUNP19."

59.   The binding sequences of DUNP19 are SEQ ID NOS. 1 and 2 in the '377 application.

60. The binding sequences of DUNP19 therefore consist of Agensys LRRC15 Antibody Trade Secret binding sequences, i.e., one of the anti-LRRC15 antibodies developed in Agensys' AGS79 program.

61. Regents and Radiopharm have pursued and are pursuing pre-clinical testing of the DUNP19 antibody to target cancers such as osteosarcoma and intend to use therapeutic agents such as ADCs that incorporate or are derived from the Agensys LRRC15 Antibody Trade Secrets and related confidential information.

62. Ulmert serves on the Scientific Advisory Board of Radiopharm.

### *Zelgen*

63. On information and belief, in or about August 2019, Peekhaus left Regents and was hired as the Director of Research at Gensun Biopharma Inc. ("Gensun"), a U.S.-based subsidiary of Shuzhou Zelgen Biopharmaceuticals Co., Ltd. and Shanghai Zelgen Pharma. Tech Co. Ltd. (collectively "Zelgen").

64. On December 12, 2021, Zelgen began filing patent applications that used and disclosed Agensys LRRC15 Antibody Trade Secrets and related confidential information, beyond that disclosed in the Regents patent applications. PCT Application No. PCT/CN2022/138466 and its subsequent publication as WO 2023/104214 A1, assigned to Zelgen, disclosed Agensys LRRC15 Antibody Trade Secret amino acid binding sequences for LRRC15, including the amino acid binding sequences for at least two additional anti-LRRC15 antibodies developed in the Agensys AGS79 program while Peekhaus worked for Agensys.

65. In the Zelgen applications, multiple disclosed sequences of over 100 amino acids are exact replicas (i.e., copies) of the Agensys Antibody LRRC15 Trade Secret amino acid binding sequences for anti-LRRC15 antibodies developed in Agensys' AGS79 program. These Zelgen-disclosed amino acid binding sequences are distinct from the amino acid binding sequences for LRRC15 disclosed by Regents as SEQ ID NOS. 1 and 2 in the '377 application.

66.     Peekhaus had access to, and involvement with, the Zelgen-disclosed amino acid binding sequences during his period of employment at Agensys, as the leader of the AGS79 program.  On information and belief, Peekhaus provided these Agensys LRRC15 Antibody Trade Secret sequences to Zelgen for their use, inclusion in the Zelgen application to obtain patent coverage, and their development and commercialization.

### Peekhaus Violated His Contractual Obligations To Agensys

67.     As a condition of his employment, on March 30, 2010, Peekhaus and Agensys executed a "Confidentiality and Intellectual Property Development Agreement" (the "Employment Agreement").  The Employment Agreement uses the term "Astellas" that is defined to include Agensys, among other affiliated entities. The Employment Agreement states in part "I understand that I am or will be employed by one of the companies comprising the Astellas US Group which are: Agensys, Inc. . . ."  The Employment Agreement is a contract between Peekhaus and Agensys.  In the following paragraphs 68-72, the term "Astellas" refers to Agensys.

68.     Pursuant to paragraph 2 of the Employment Agreement ("Disclosure of Confidential Information"), Peekhaus agreed "I will not without Astellas' prior permission, directly or indirectly utilize or disclose to anyone outside of Astellas, either during or after my employment with Astellas ends, trade secrets or other confidential information of Astellas, or any information received in confidence from third parties by Astellas or about third parties received by Astellas, as long as such matters remain trade secrets or confidential."

69.     Paragraph 2 of the Employment Agreement defined "Trade secrets and other confidential information" to "include any information or material which is not generally known to the public and which (a) is generated or collected by or utilized in the operations of Astellas and relates to the actual or anticipated business or research or development of Astellas; or (b) is suggested by or results from any task assigned to me by Astellas or work performed by me for or on behalf of Astellas."

70.     Paragraph 2 of the Employment Agreement further provides examples of confidential information, including "pre-clinical and clinical studies, pipeline products, development programs, . . . technical know-how, formulae, processes, chemicals, preparations, test data, designs, prototypes, models, software, solutions, and research and development."

71.     Pursuant to paragraph 3 of the Employment Agreement ("Return of Property and Copying"), Peekhaus affirmed "I agree that all tangible materials (whether originals or duplicates), including, but not limited to, notebooks, computers, files, reports, proposals, . . . formulae, prototypes, tools, equipment, models, specifications, technical data, study data, methodologies, research results, test results, laboratory results, financial data, contracts, agreements, correspondence, documents, computer disks, software, computer printouts, information stored electronically on a computer, memoranda, and notes, in my possession or control which in any way relate to Astellas' business shall be the sole property of Astellas and that I shall not directly or indirectly use or supply such items or information to any competitor or other third-party . . . and in any event promptly upon termination of my employment with Astellas, deliver all such materials to Astellas and will not retain any originals, copies or summaries of such materials."

72.     Pursuant to paragraph 4 of the Employment Agreement ("Assignment of IP"), Peekhaus agreed that "I hereby assign to Astellas my entire right, title, and interest in any idea, formula, invention, discovery, design, drawing, process, method, technique, device, improvement, computer program and related documentation, technical and non-technical data and work of authorship . . . which I may solely or jointly conceive, write or acquire during the period I am working with Astellas . . ."

73.     Peekhaus breached these provisions of the Employment Agreement by disclosing the Agensys LRRC15 Antibody Trade Secrets and related confidential information to Regents, Ulmert, and others, using the Agensys LRRC15 Antibody Trade Secrets and related confidential information after he left Agensys for the

benefit of Defendants, Radiopharm, Gensun, Zelgen, and potentially others, and by purporting to assign inventions and discoveries to Regents and/or other entities where the inventions and discoveries were rightfully assigned to Agensys.

**<u>FIRST CAUSE OF ACTION</u>**

**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act**

**(18 U.S.C. § 1836, *et seq.*)**

**(Against All Defendants)**

74.     Agensys incorporates by reference the allegations contained in paragraphs 1 through 73 as though fully set forth herein.

75.     Agensys is the owner of Agensys LRRC15 Antibody Trade Secrets and related confidential information that, as described above, constitute trade secrets within the meaning of 18 U.S.C. § 1839(3).  Agensys' trade secrets are scientific, technical, and engineering information including patterns, plans, formulas, designs, prototypes, methods, techniques, processes, and medical treatments or therapies that are used, sold, shipped and/or ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate and foreign commerce.  Throughout its development and use of the Agensys LRRC15 Antibody Trade Secrets, Agensys intended for the trade secrets to become used in a product in interstate and foreign commerce.

76.     At all relevant times, Agensys has taken reasonable measures and precautions to keep this information secret.  As described above, Agensys took measures including, but not limited to, restricting access to sensitive information, requiring employees and contractors to sign agreements prohibiting use and disclosure of such information outside Agensys, protecting files and information from unauthorized access, restricting physical access and implementing security systems at Agensys' facilities and storage sites, and requiring the return of sensitive materials upon termination of agreements.

77.     Agensys' trade secrets derive independent economic value from not being generally known to the public and not readily ascertainable through proper

means by others who can obtain economic value from their disclosure or use. Agensys' trade secrets are not readily ascertainable or capable of being reverse-engineered by other competitors, and thus their confidentiality allowed Agensys to obtain a competitive advantage that is otherwise eliminated by their disclosure.

78.   Any competitor who learns of Agensys' trade secret information would receive an unfair competitive advantage that could tangibly harm Agensys' competitive position in the market, potentially depriving Agensys of many millions of dollars in lost revenue.

79.   Developing trade secrets and maintaining their secrecy are critical to Agensys' business.  Agensys' medicines and therapies are a byproduct of its robust research and development program.  The pharmaceutical research and development industry is highly competitive.   Agensys protects its trade secrets to prevent competitors from acquiring, disclosing, and using Agensys' trade secrets.

80.   Regents, Peekhaus, and Ulmert have misappropriated the Agensys LRRC15 Antibody Trade Secrets and related confidential information, as described above.

81.   Defendants have used the Agensys LRRC15 Antibody Trade Secrets and related confidential information to unfairly advance the development of Defendants' own products and technology to Agensys' detriment.

82.   Peekhaus improperly disclosed the Agensys LRRC15 Antibody Trade Secrets and related confidential information to Regents, Ulmert, and others, without Agensys' knowledge or consent.

83.   On information and belief, Regents and Ulmert, knew, reasonably should have known, or were willfully blind to the fact that Peekhaus owed Agensys an obligation to maintain the secrecy of the Agensys LRRC15 Antibody Trade Secrets and related confidential information, and that they were violating Agensys' trade secret rights by acquiring, using, and/or disclosing the Agensys LRRC15 Antibody Trade Secrets.

84.     Regents, Peekhaus, and Ulmert improperly disclosed, without Agensys' knowledge or consent, the Agensys LRRC15 Antibody Trade Secrets and related confidential information by, among other things, publicly disclosing them in published patent applications.

85.     Defendants' conduct constitutes misappropriation of trade secrets under 35 U.S.C. § 1836.

86.     Agensys has been, and continues to be, harmed by Defendants' misappropriation of Agensys' trade secrets.  Agensys thus seeks compensatory damages and equitable relief.

87.     Defendants' actions have caused and will continue to cause Agensys to suffer severe competitive injury, irreparable harm, and significant damages in an amount to be proven at trial.  As the direct and proximate result of such misappropriation, Agensys has suffered, among other things, damage within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i) in an amount that is yet unknown.  If Defendants' conduct is allowed to continue unchanged, Agensys will continue to suffer irreparable injury and significant damages.

88.     Because Agensys' remedy at law is inadequate to compensate Agensys for Defendants' misappropriation of the Agensys LRRC15 Antibody Trade Secrets, Agensys also seeks equitable relief.  Agensys is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) and seeks appropriate, just equitable relief to recover and protect its proprietary, confidential, and trade secret information, and to protect its other legitimate business interests.

89.     On information and belief, Defendants' misappropriation of trade secrets was willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C),(D).  Accordingly, Agensys is entitled to recover exemplary damages and its reasonable attorneys' fees.

90.     Pursuant to the Court's inherent powers and pursuant to 18 U.S.C. § 1836(b), Agensys asks the Court to provide any additional relief appropriate to

remedy Defendants' misappropriation of trade secrets, including the assignment of all patent applications or patents purportedly assigned to Regents that disclose, claim, or were derived from any of the Agensys LRRC15 Antibody Trade Secrets and related confidential information, including any assignment of all amendments, continuations, and U.S. or foreign counterparts thereto.

## SECOND CAUSE OF ACTION

### Declaratory Judgment

### (28 U.S.C. § 2201)

### (Against All Defendants)

91.     Agensys incorporates by reference the allegations contained in paragraphs 1 through 90 as though fully set forth herein.

92.     There exists an actual, ripe, and justiciable controversy between Agensys and Defendants regarding each party's rights and interests in the Patent Rights.

93.     As described above, Peekhaus developed and/or had access to Agensys LRRC15 Antibody Trade Secrets and related confidential information, including the amino acid binding sequences for LRRC15 disclosed by Regents as SEQ ID NOS. 1 and 2, during the course and scope of his employment with Agensys.  As described above, these Agensys LRRC15 Antibody Trade Secrets, including the amino acid binding sequences for LRRC15 disclosed by Regents as SEQ ID NOS. 1 and 2, and related confidential information arose out of or resulted from confidential Agensys information Peekhaus obtained, was provided, or otherwise acquired in connection with his employment with Agensys.

94.     Peekhaus subsequently disclosed these Agensys LRRC15 Antibody Trade Secrets, including the amino acid binding sequences for LRRC15 disclosed by Regents as SEQ ID NOS. 1 and 2, and related confidential information to Regents, Ulmert, and others, in violation of his Employment Agreement with Agensys. Regents, Peekhaus, and Ulmert improperly used the Agensys LRRC15 Antibody

Trade Secrets to prepare patent applications and publications, and disclosed the Agensys LRRC15 Antibody Trade Secrets and other related confidential information in those patent applications and publications, including the amino acid binding sequences for LRRC15 identified as SEQ ID NOS. 1 and 2.

95. Defendants also improperly used the Agensys LRRC15 Antibody Trade Secrets and related confidential information to derive further inventions, improvements, and discoveries that Defendants disclosed and claimed in the Patent Rights.

96. Pursuant to the terms of the Employment Agreement between Agensys and Peekhaus, as described above, Agensys is the legal and/or equitable owner of inventions and discoveries disclosed in the Patent Rights.

97. As a result of the Employment Agreement as well as the trade secret misappropriation and events described in detail above, Agensys has legal and/or equitable ownership and/or other property interests in the Patent Rights, inconsistent with and superior to any interest claimed by Defendants and without being subject to any license purportedly granted by Regents.

98. Due to Defendants' misconduct in acquiring, using, and disclosing the Agensys LRRC15 Antibody Trade Secrets and related confidential information as described above, Defendants have forfeited any competing interest in the Patent Rights. Agensys' ownership and related interests include sole or joint legal and equitable ownership of the Patent Rights and any related patents, patent applications, continuations, continuations-in-part, divisionals, and foreign or U.S. counterparts thereof that Defendants have or will file or claim. The Court should so declare pursuant to 28 U.S.C. § 2201.

### THIRD CAUSE OF ACTION

**Breach of Contract**

**(Inventions Assignment Provisions)**

**(Against Peekhaus)**

99.   Agensys incorporates by reference the allegations contained in paragraphs 1 through 98 as though fully set forth herein.

100.   Peekhaus' Employment Agreement with Agensys is a valid and enforceable agreement.

101.   Agensys performed all terms, conditions, and obligations required of it under the Employment Agreement.

102.   The Employment Agreement provided that Peekhaus did "hereby assign" to Agensys all right, title, and interest in any idea, formula, invention, discovery, design, drawing, process, method, technique, device, improvement, computer program and related documentation, technical and non-technical data, and work of authorship which Peekhaus may solely or jointly conceive, write, or acquire while working with Agensys.

103.   In the Employment Agreement, Peekhaus acknowledged that all intellectual property rights in the inventions, discoveries, and other matters described in the foregoing paragraph belong to Agensys.

104.   The Employment Agreement also required that Peekhaus promptly execute any and all documents assigning and otherwise vesting title in Agensys in any inventions, discoveries, and other matters described in Paragraph 102 above.

105.   Peekhaus violated these provisions by purporting to assign to Regents the inventions and discoveries set forth in the Patent Rights.

106.   As the direct and proximate result of these breaches, Agensys has suffered and, if Peekhaus' conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial.

107.   As the direct and proximate result of these breaches, Peekhaus has improperly obtained benefits, in an amount to be proven at trial, for which Agensys is entitled to restitution.

108.   On information and belief, if Peekhaus continues to misappropriate and use Agensys LRRC15 Antibody Trade Secrets and related confidential information for his own benefit or the benefit of others, Agensys will suffer competitive injury to its significant detriment.  Because Agensys' remedy at law is inadequate to fully compensate for its harm, Agensys seeks, in addition to damages, equitable relief to recover its inventions and intellectual property, including equitable transfer to Agensys of ownership of the Patent Rights, and any and all related patents, patent applications, continuations, continuations-in-part, divisionals, and foreign or U.S. counterparts thereof, both U.S. and foreign, to protect Agensys' legitimate business interests.

## **FOURTH CAUSE OF ACTION**

### **Breach of Contract**

### **(Confidentiality Provisions)**

### **(Against Peekhaus)**

109.   Agensys incorporates by reference the allegations contained in paragraphs 1 through 108 as though fully set forth herein.

110.   Peekhaus' Employment Agreement with Agensys is a valid and enforceable agreement.

111.   Agensys performed all terms, conditions, and obligations required of it under the Employment Agreement.

112.   The Employment Agreement requires that Peekhaus return property and information provided by and/or belonging to Agensys at the end of his employment. The Employment Agreement also prohibits Peekhaus from disclosing or using Agensys' confidential information for any purpose except for his employment with Agensys.

113.   After departing Agensys, Peekhaus violated the Employment Agreement by failing to return Agensys' property and information; by using Agensys LRRC15 Antibody Trade Secrets and related confidential information to his, Regents', and Ulmert's benefit; and by disclosing Agensys LRRC15 Antibody Trade Secrets and related confidential information to Regents, Ulmert, and others.  Regents and Ulmert thereafter used and disclosed Agensys LRRC15 Antibody Trade Secrets and related confidential information as detailed above.

114.   As the direct and proximate result of these breaches, Agensys has suffered and, if Peekhaus' conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial.

115.   As the direct and proximate result of these breaches, Peekhaus has improperly obtained benefits, in an amount to be proven at trial, for which Agensys is entitled to restitution.

116.   On information and belief, if Peekhaus continues to misappropriate and use Agensys LRRC15 Antibody Trade Secrets and related confidential information, Agensys will suffer competitive injury to its significant detriment.  Because Agensys' remedy at law is inadequate to fully compensate for its harm, Agensys seeks, in addition to damages, equitable relief to recover its inventions and intellectual property, including equitable assignment of the Patent Rights, and any and all related patents, patent applications, continuations, continuations-in-part, divisionals, and foreign or U.S. counterparts thereof, both U.S. and foreign, to protect Agensys' legitimate business interests.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Agensys prays for judgment against Defendants Regents, Peekhaus, Ulmert, and Does 1-10 as follows:

1.     Judgment in Agensys' favor against Defendants on all causes of action alleged herein;

2.      Damages according to proof in an amount to be determined at trial;

3.      Exemplary damages in view of the willful and malicious misappropriation of Agensys' trade secrets in an amount to be determined at trial;

4.      A declaration that Agensys has legal or equitable ownership or co-ownership and interest in the Patent Rights, and all related patents, patent applications, continuations, continuations-in-part, divisionals, and foreign or U.S. counterparts thereto, including, but not limited to, U.S. Patent Application No. 17/915,377; U.S. Provisional Application No. 63/003,598; and International Application No. PCT/US2021/025054, inconsistent and superior to any interest asserted by Defendants and without being subject to any license purportedly granted by Regents;

5.      Injunctive relief, including a permanent injunction: (a) requiring Defendants, and any other individuals and entities acting in concert with them, to return all of Agensys' confidential information; (b) requiring Defendants to disclose and assign to Agensys any and all inventions, including all pending patent applications and issued patents, of which Agensys is the rightful owner or which contain or are derived from Agensys' trade secrets or other confidential information; (c) prohibiting Defendants and those acting in concert with them from using Agensys' trade secrets, confidential information, and inventions without Agensys' consent; and (d) enjoining Defendants from further prosecution of patent applications, without Agensys' consent and control, of which Agensys is the rightful owner or which contain or are derived from Agensys' trade secrets or other confidential information;

6.      A declaration that Agensys has the right to prosecute the Patent Rights, and all related patents, patent applications, continuations, continuations-in-part, divisionals, and foreign or U.S. counterparts thereto;

7.      A judgment that Agensys is entitled to specific performance by Peekhaus of all provisions in his Employment Agreement with Agensys, including

the assignment of all exclusive ownership, rights, and titles developed within the scope of his employment, to Agensys;

8.     Restitution of all property, profits, or other benefits wrongfully acquired;

9.     Attorneys' fees and costs incurred by virtue of the dispute;

10.     Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

11.     Such other and further relief as Agensys may be entitled to or the Court may deem proper.

Dated: May 13, 2024                        JONES DAY


                                           By: *s/ Randall E. Kay*
                                           Randall E. Kay

                                           Attorneys for Plaintiff
                                           AGENSYS, INC.

## **DEMAND FOR JURY TRIAL**

Plaintiff Agensys, Inc. respectfully requests a jury trial in this action on all issues so triable.


Dated: May 13, 2024                        JONES DAY


                                           By: *s/ Randall E. Kay*
                                           Randall E. Kay

                                           Attorneys for Plaintiff
                                           AGENSYS, INC.