| | |
|---|---|
| JONES DAY<br>Randall E. Kay (SBN 149369)<br>rekay@jonesday.com<br>4655 Executive Drive, Suite 1500<br>San Diego, California 92121.3134<br>Telephone: +1.858.314.1200<br><br>Andrea W. Jeffries (SBN 183408)<br>ajeffries@jonesday.com<br>Ariana S. Wilner (SBN 352547)<br>awilner@jonesday.com<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: +1.213.489.3939<br><br>Sarah A. Geers (*Pro Hac Vice*)<br>sgeers@jonesday.com<br>250 Vesey Street<br>New York, NY 10281<br>Telephone: +1.212.326.3936<br><br>*Attorneys for Plaintiffs AGENSYS, INC. and ASTELLAS PHARMA, INC.* | PILLSBURY WINTHROP SHAW PITTMAN LLP<br>Carolyn S. Toto (SBN 233825)<br>carolyn.toto@pillsburylaw.com<br>725 South Figueroa Street, 36th Floor<br>Los Angeles, CA 90017<br>Telephone: 213.488.7100<br><br>David J. Tsai (SBN 244479)<br>david.tsai@pillsburylaw.com<br>Alekzandir Morton (SBN 319241)<br>alekzandir.morton@pillsburylaw.com<br>John Steger (SBN 341299)<br>john.steger@pillsburylaw.com<br>Natalie Truong (SBN 346680)<br>natalie.truong@pillsburylaw.com<br>Christopher J. Garza Estrada, Jr. (SBN 353027)<br>chris.garzaestrada@pillsburylaw.com<br>Four Embarcadero Center, 22nd Floor<br>San Francisco, CA 94111-5998<br>Telephone: 415.983.1000<br><br>*Attorneys for Defendant Hans David Ulmert*<br><br>BALLARD ROSENBERG GOLPER AND SAVITT LLP<br>John J. Manier (SBN 145701)<br>jmanier@brgslaw.com<br>15760 Ventura Boulevard 18th Floor<br>Encino, CA 91436<br>Telephone: 818.508.3700<br><br>*Attorney for Defendant Norbert Peekhaus* |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGENSYS, INC. and ASTELLAS PHARMA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>HANS DAVID ULMERT and NORBERT PEEKHAUS,<br><br>Defendants. | Case No. 2:24-cv-03961-CV (PDx)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Honorable Cynthia Valenzuela<br>Courtroom 5D |

Plaintiffs Agensys, Inc. and Astellas Pharma, Inc. (collectively "Agensys"), Defendant Hans David Ulmert ("Ulmert") and Defendant Norbert Peekhaus ("Peekhaus") by and through their undersigned counsel, advise the Court of the following:

## I. THE DATE THE CASE WAS FILED.

The complaint was filed May 13, 2024.

## II. A LIST IDENTIFYING OR DESCRIBING EACH PARTY

1. Plaintiff Agensys Inc. is a California corporation that was founded in 1997 in Santa Monica, California as a biotechnology company specialized in therapeutic antibody research and development in cancer.

2. Plaintiff Astellas Pharma, Inc. is a global life sciences company and owner of Agensys.

3. Defendant Dr. Hans David Ulmert is an individual employed by the Regents of the University of California at its UCLA campus.

4. Defendant Dr. Norbert Peekhaus is an individual, a former employee of Agensys, and former employee of UCLA.

## III. A BRIEF SUMMARY OF ALL CLAIMS, COUNTERCLAIMS, CROSSCLAIMS, OR THIRD PARTY CLAIMS

Plaintiffs' Second Amended Complaint asserts claims as follows:

1. First Cause of Action: Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (18 U.S.C. §§1836-39) by Agensys and Astellas Against Drs. Ulmert and Peekhaus;

2. Second Cause of Action: Declaratory Judgment (28 U.S.C. § 2201) by Agensys and Astellas Against Drs. Ulmert and Peekhaus;

3. Third Cause of Action: Breach of Contract (Inventions Assignment Provisions) by Agensys Against Dr. Peekhaus; and

4. Fourth Cause of Action: Breach of Contract (Confidentiality Provisions) by Agensys Against Dr. Peekhaus.

No counterclaims, crossclaims or third party claims are pending.

## IV. A BRIEF DESCRIPTION OF THE EVENTS UNDERLYING THE ACTION

Plaintiffs' Description of Events:

Plaintiffs assert theft of intellectual property by former Agensys scientist Norbert Peekhaus and UCLA assistant professor Hans David Ulmert. Plaintiffs created novel antibodies in a years-long research program at Agensys in Santa Monica, California. Defendants improperly used Plaintiffs' trade secrets to commercialize and patent Plaintiffs' inventions at UCLA without Plaintiffs' consent. Defendants stole Plaintiffs' lead antibody candidate and backup candidates for a particular cancer therapy. The Agensys antibodies are used to create highly targeted drugs that selectively attack a protein known as "LRRC15" associated with many types of cancer cells. Defendants engaged in acts to commercialize Plaintiffs' trade secrets through numerous third party entities. Defendants also used the Agensys lead antibody and secret amino acid sequences in patent applications naming Peekhaus and Ulmert as inventors and the Regents of the University of California ("Regents") as assignee. Peekhaus admits that he took the Agensys antibodies to UCLA and disclosed them to Ulmert, and Ulmert admits he acquired the Agensys antibodies from Peekhaus. Defendants' actions constitute misappropriation of trade secrets, and Peekhaus' conduct breached his contract with Agensys.

Defendant Dr. Ulmert's Description of Events:

Dr. Ulmert disputes Plaintiffs' allegations and description of events and he asserts that neither he nor Dr. Peekhaus misappropriated any trade secrets. Plaintiffs abandoned the alleged trade secrets prior to Dr. Ulmert's research at UCLA, and Plaintiffs engaged in no efforts—let alone reasonable efforts—to protect any trade secrets they may have possessed. Agensys ceased operations in 2017, and Astellas, having determined Agensys to be an unviable investment, made no efforts to continue or commercialize its research. Plaintiffs took no steps to safeguard any purported

trade secrets, allowing former employees, including Dr. Peekhaus, to retain research materials without restriction.  Notably, Plaintiffs did not ask Dr. Peekhaus to return all property and documents from his employment with Agensys, nor did Plaintiffs ask Dr. Peekhaus to represent he had no property or documents from his employment with Agensys.  Plaintiffs also did not take sufficient measures to protect their electronic files at the time of Agensys's shutdown and cessation of operations, such as by conducting forensic analyses to confirm that employees had not emailed documents to their personal email addresses or copied documents to hard drives.  To the extent Plaintiffs did conduct such analyses at or around the time of the Agensys shutdown, their claims are barred by the applicable statutes of limitations.

Further, Dr. Ulmert's work, and the patents at issue, are based on independent scientific research and longstanding public knowledge regarding LRRC15 as a cancer target.  Upon joining UCLA in 2018, Dr. Ulmert conducted novel research on LRRC15 in the radiotheranostics space, an approach fundamentally different from Agensys' antibody-drug conjugate (ADC) research.  His work involved substantial innovation, including in vitro and in vivo studies, which ultimately led to the inventions described in the patent applications filed by UCLA.  Dr. Ulmert's research and the inventions described in the patent applications aim to advance cancer treatments that Plaintiffs themselves never pursued.

Defendant Dr. Peekhaus's Description of Events:

Dr. Peekhaus joins in Dr. Ulmert's description of events.  He further adds that the agreement that Agensys claims he breached is unenforceable on multiple grounds.

## V. A DESCRIPTION OF THE RELIEF SOUGHT AND THE DAMAGES CLAIMED WITH AN EXPLANATION OF HOW DAMAGES HAVE BEEN (OR WILL BE) COMPUTED

Plaintiffs' Position:

Plaintiffs seek monetary, declaratory, and injunctive relief and specific

performance.

For damages caused by Defendants' interactions with Regents of the University of California, Plaintiffs claim damages resulting from Defendants' misappropriation including (1) actual losses resulting from loss of patent rights, loss of control of patent rights, and shortened patent life due to the timing of the filing and publication of Plaintiffs' trade secrets earlier in time than would have been the case absent Defendants' misappropriation; and amounts paid to Peekhaus including severance pay of $61,013, value of COBRA group health benefits paid for Peekhaus, the gross lump sum of $10,000 paid to Peekhaus for outplacement services, bonus paid to Peekhaus, and other amounts paid to Peekhaus in connection with his Confidential Separation Agreement and Release; (2) unjust enrichment in forms and amounts in the expert opinions to be provided on the date set by the court for disclosure of affirmative expert reports including unjust enrichment from Defendants' use of technology that Plaintiffs licensed from Regeneron, unjust enrichment from Defendants' dealings with Regents of the University of California/UCLA, and unjust enrichment amounts Peekhaus and Ulmert received from use, disclosure or licensing of Plaintiffs' trade secrets; (3) reasonable royalty damages in an amount in the expert opinions to be provided on the date set by the court for disclosure of affirmative expert reports; (4) interest on damages; (5) exemplary damages in an amount not more than two times the amount of compensatory damages; and (6) reasonable attorneys' fees.

For damages caused by Defendants outside of their interactions with Regents of the University of California, Plaintiffs claim damages resulting from Defendants' misappropriation including (1) actual losses resulting from loss of patent rights, loss of control of patent rights, and shortened patent life due to the timing of the filing and publication of Plaintiffs' trade secrets earlier in time than would have been the case absent Defendants' misappropriation; and amounts paid to Peekhaus including severance pay of $61,013, value of COBRA group health benefits paid for Peekhaus,

the gross lump sum of $10,000 paid to Peekhaus for outplacement services, bonus paid to Peekhaus, and other amounts paid to Peekhaus in connection with his Confidential Separation Agreement and Release; (2) unjust enrichment in forms and amounts in the expert opinions to be provided on the date set by the court for disclosure of affirmative expert reports including unjust enrichment from Defendants' use of technology that Plaintiffs licensed from Regeneron, unjust enrichment from Defendants' dealings with Pharma15 Corporation, Radiopharm Theranostics (USA) Inc., Radiopharm Theranostics Limited, Lantheus Holdings, Inc., Gensun Biopharma Inc., Uptake Bio AB, Shuzhou Zelgen Biopharmaceuticals Co., Ltd., Shanghai Zelgen Pharma. Tech Co. Ltd, Lund University, Innovagen AB, and Kite Pharma, Inc. and unjust enrichment amounts Peekhaus and Ulmert received from use, disclosure, or licensing of Plaintiffs' trade secrets; (3) reasonable royalty damages in an amount in the expert opinions to be provided on the date set by the court for disclosure of affirmative expert reports; (4) interest on damages; (5) exemplary damages in an amount not more than two times the amount of compensatory damages; and (6) reasonable attorneys' fees.

In declaratory relief, Plaintiffs seek a declaration that Ulmert and Peekhaus have no legal right to use or disseminate Plaintiffs' trade secrets and related confidential information and that all benefits, including compensation, upfront payments, milestones, royalties, or other payments (or allocations thereof) resulting from such use or dissemination shall be the property of Agensys; a declaration that Agensys has legal or equitable ownership or coownership and interest in the Patent Rights, and all related patents, patent applications, continuations, continuations-in-part, divisionals, and foreign or U.S. counterparts thereto, including, but not limited to, U.S. Patent Application No. 17/915,377; U.S. Provisional Application No. 63/003,598; and International Application No. PCT/US2021/025054, inconsistent and superior to any interest asserted by Defendants and without being subject to any license purportedly granted by Regents; and a declaration that Agensys

has the right to prosecute the Patent Rights, and all related patents, patent applications, continuations, continuations in-part, divisionals, and foreign or U.S. counterparts thereto.

In injunctive relief, Plaintiffs seek a permanent injunction: (a) requiring Ulmert and Peekhaus, and any other individuals and entities acting in concert with them, to return all of Agensys' confidential information; (b) requiring Ulmert and Peekhaus to disclose and assign to Agensys any and all inventions, including all pending patent applications and issued patents, of which Agensys is the rightful owner or which contain or are derived from Plaintiffs' trade secrets or other confidential information; (c) prohibiting Ulmert and Peekhaus and those acting in concert with them from using Plaintiffs' trade secrets, confidential information, and inventions without Agensys' consent; and (d) enjoining Ulmert and Peekhaus from further prosecution of patent applications, without Agensys' consent and control, of which Agensys is the rightful owner or which contain or are derived from Plaintiffs' trade secrets or other confidential information.

In specific performance, Plaintiffs seek a judgment that Agensys is entitled to specific performance by Peekhaus of all provisions in his Employment Agreement with Agensys, including the assignment of all exclusive ownership, rights, and titles developed within the scope of his employment, to Agensys.

<u>Defendant Dr. Ulmert's Position</u>:

Dr. Ulmert disputes Plaintiffs' claims for damages and injunctive relief, and asserts that Plaintiffs are not entitled to any relief.

First, Plaintiffs abandoned the underlying research in 2017 when Agensys ceased operations. They failed to patent or protect the work and made no efforts to develop it into a viable product. For more than seven years, Plaintiffs took no steps to commercialize or otherwise pursue any scientific advancements related to their alleged trade secrets.

Second, there was no misappropriation by Dr. Ulmert. His work on LRRC15-

focused radiotheranostics is fundamentally distinct from Agensys' abandoned antibody-drug conjugate (ADC) approach. Dr. Ulmert conducted substantial and independent research at UCLA, leading to the development of novel therapeutic applications that Plaintiffs had never pursued. The patent applications filed by UCLA are the product of this independent innovation, not any alleged trade secrets of Plaintiffs.

Third, Plaintiffs have failed to demonstrate any financial harm. Their damages calculations are entirely speculative. Plaintiffs' claim for damages against Dr. Ulmert is especially attenuated because there is no evidence that he personally profited from any alleged misappropriation.

Finally, Plaintiffs' request for injunctive relief is unwarranted and anti-competitive. Plaintiffs never commercialized their alleged trade secrets, did not develop them into a viable treatment, and are now attempting to use this lawsuit to block critical university research that could benefit cancer patients. Granting Plaintiffs' requested relief would undermine scientific progress and set a precedent that stifles academic innovation and public health advancements.

<u>Defendant Dr. Peekhaus's Position:</u>

Dr. Peekhaus joins in the statement set forth by Dr. Ulmert, and adds that Agensys is not entitled to any relief on its claims for breach of contract.

## VI. THE STATUS OF DISCOVERY, INCLUDING ANY SIGNIFICANT DISCOVERY MANAGEMENT ISSUES, AS WELL THE APPLICABLE CUTOFF DATES

Plaintiffs began taking written discovery in July 2024. Currently the parties are taking written discovery and fact depositions. Per this Court's Order Granting Stipulation to Amend Scheduling Order, discovery cutoff is June 26, 2025. (Dkt. 113).

Plaintiffs presently have discovery management issues in (1) securing written discovery from Peekhaus, Ulmert and Regents; and (2) securing deposition dates

from Ulmert and Regents.

Defendant Dr. Ulmert has a potential discovery management issue in that numerous of Plaintiffs' discovery responses, served on February 14, 2025, are deficient. Dr. Ulmert's counsel intends to meet and confer with Plaintiffs' counsel on these deficient responses.

## VII. A PROCEDURAL HISTORY OF THE CASE, INCLUDING ANY PREVIOUS MOTIONS THAT WERE DECIDED OR SUBMITTED, ANY ADR PROCEEDINGS OR SETTLEMENT CONFERENCES THAT HAVE BEEN SCHEDULED OR CONCLUDED, AND ANY APPELLATE PROCEEDINGS THAT ARE PENDING OR CONCLUDED

The parties mediated in private mediation before Jeff Kichaven on January 21, 2025. The matter did not settle. While no further ADR is scheduled, the parties will engage in further facilitated discussions as appropriate.

Defendants moved to dismiss the complaint and in response Plaintiffs filed an amended complaint. Defendants moved to dismiss the amended complaint and those motions were granted in part and denied in part, with leave to amend. Defendants moved to dismiss the second amended complaint and those motions were denied.

No appellate proceedings have been filed.

## VIII. A DESCRIPTION OF ANY OTHER DEADLINES IN PLACE; BEFORE REASSIGNMENT

Pursuant to the Court's Order Granting Stipulation to Amend Scheduling Order, Dkt. 113, deadlines before reassignment have been modified as follows:

| Event | Current Date |
|---|---|
| Trial (jury) | To be reset by Court (*See* Dkt. 109) |

| Event | Current Date |
|---|---|
| [Jury trial] Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | To be reset by Court (*See* Dkt. 109) |
| Pre-Trial Conference (File Proposed Voir Dire Qs and Agreed-to Statement of Case three days prior to PTC) | To be reset by Court (*See* Dkt. 109) |
| Submit Pre-Trial Conf. Order; File Motions in Limine; Memo of Contentions of Fact and Law; Pre-Trial Exhibit Stipulation; Summary of Witness Testimony and Time Estimates; File Status Report re: Settlement; File Agreed Upon Set of Jury Instructions and Verdict Forms; File Joint Statement re Disputed Instructions, Verdicts, etc. | 8/6/25 |
| Last day for hearing motions | 7/14/25 |
| Discovery cut-off | 6/26/25 |
| Rebuttal Expert Disclosures | 5/23/25 (5 weeks before discovery cutoff) |
| Affirmative Expert Disclosures | 5/2/25 (8 weeks before discovery cutoff) |

IX. **WHETHER THE PARTIES WILL CONSENT TO A MAGISTRATE JUDGE FOR TRIAL**

The parties do not consent to a magistrate judge for trial.

X. **A STATEMENT FROM EACH PARTIES' COUNSEL INDICATING THEY HAVE (1) DISCUSSED THE MAGISTRATE JUDGE CONSENT PROGRAM WITH THEIR RESPECTIVE CLIENT(S), AND (2) MET AND CONFERRED TO DISCUSS THE CONSENT PROGRAM AND**

## SELECTION OF A MAGISTRATE JUDGE

Lead counsel for Plaintiffs, Randall Kay, has discussed the magistrate judge consent program with Plaintiffs and has met and conferred to discuss the consent program and selection of a magistrate judge with lead counsel for Defendants.

Lead counsel for Defendant Dr. Ulmert, David Tsai, has discussed the magistrate judge consent program with Dr. Ulmert and has met and conferred to discuss the consent program and selection of a magistrate judge with lead counsel for Plaintiffs and Dr. Peekhaus.

## XI. WHETHER THERE IS AN IMMEDIATE NEED FOR A SCHEDULING CONFERENCE AND, IF SO, WHY THE PARTIES BELIEVE SUCH A NEED EXISTS.

While the parties do not have an immediate need for a Scheduling Conference, the parties jointly request the setting of trial to begin the week of September 15, 2025. To the extent a later trial date is set, Defendants expressly reserve the right to seek a further modification of the scheduling order to align the discovery dates with the new trial date.

Dated: February 20, 2025

JONES DAY

By: *s/ Randall E. Kay*
Randall E. Kay
Attorneys for Plaintiffs Agensys, Inc.
and Astellas Pharma, Inc.

Dated: February 20, 2025

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: *s/ David J. Tsai*
David J. Tsai
Attorneys for Defendant Hans David Ulmert

| | | |
|---|---|---|
| 1 | Dated: February 20, 2025 | BALLARD ROSENBERG GOLPER & SAVITT, LLP |
| 2 | | |
| 3 | | |
| 4 | | By: *s/ John J. Manier* |
| | | John J. Manier |
| 5 | | Attorneys for Defendant Norbert Peekhaus |

## ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing by email.

Dated: February 20, 2025

      *s/ Randall E. Kay*
      Randall E. Kay